**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| MARK GREENE,<br>Plaintiff<br>v.<br>WILLIAM "BILLY" BROWN,<br>Defendant | Civil Action No. 11-2242 (CKK) |

**MEMORANDUM OPINION**
(May 15, 2015)

Plaintiff Mark Greene is a performer, an original member of the musical group known as "The Moments," and the owner of the federally-registered trademark, "The Moments." In this case, Plaintiff brings a claim for trademark infringement and counterfeiting under the Lanham Act against Defendant William "Billy" Brown, a member of the performing group "Ray, Goodman & Brown." Plaintiff seeks monetary and injunctive relief. Plaintiff alleges that Defendant wrongfully used the "Moments" trademark in advertising live performances of his performing group and in promoting the group Ray, Goodman & Brown on the Internet. Before the Court is Plaintiff's [36] Renewed Motion for Default Judgment. Upon consideration of the pleadings,[1] the relevant legal authorities, and the record as a whole, the Court GRANTS IN PART and DENIES IN PART Plaintiff's [36] Renewed Motion for Default Judgment. The Court will enter a default judgment in the amount of $83,606.60 in Plaintiff's favor, including $82,500 in treble profits and $1,106.60 in costs, based on the allegations in the complaint and the documentation that Plaintiff submitted in support of the Renewed Motion for Default Judgment. The Court denies Plaintiff's request for a permanent injunction because Plaintiff has not shown a

[1] The Court's consideration has focused on Plaintiff's Renewed Motion for Default Judgment ("Renewed Mot."), ECF No. 36. In an exercise of its discretion, the Court finds that holding oral argument in this action would not be of assistance in rendering a decision. *See* LCvR 7(f).

threat of continuing harm. The Court denies without prejudice Plaintiff's request for attorneys' fees because Plaintiff has not provided the documentation necessary for the Court to issue such an award.

## I. BACKGROUND

Plaintiff and Defendant are both recording and performing artists. Am. Compl. ¶¶ 3-4. Plaintiff was an original member of The Moments, a recording and performing musical group. *Id.* ¶ 6. Plaintiff is the owner of the federally-registered trademark for The Moments, Registration No. 2656413, Serial No. 76364446 (the "Moments Mark"). *Id.* ¶ 7. Plaintiff acquired the trademark on December 3, 2002, and renewed it for a second ten-year period on September 8, 2012. *Id.* ¶¶ 8-9. Plaintiff uses the Moments Mark to promote his singing group, which he advertises as "The Moments, featuring Mark Greene." *Id.* ¶ 10. Defendant is the last surviving original member of the performing group, Ray, Goodman & Brown. *Id.* ¶ 12.

Defendant has used the Moments Mark to advertise live performances of his singing group, Ray, Goodman & Brown, as "The Moments." For example, Defendant used the Moments Mark to advertise live performances in San Diego, California, at the Cox Arena, on or about February 2010; live performances in Universal City, California, at the Gibson Amphitheatre, on or about April 2011; and a live performance at The Arc Theater in the District of Columbia on December 17, 2011. *Id.* ¶¶ 15, 17, 18. In addition, Defendant has used the Moments Mark on the internet, specifically on the Ray, Goodman & Brown MySpace and Facebook pages, as well as on YouTube, to advertise and promote Ray, Goodman & Brown. *Id.* ¶ 16.

After Plaintiff discovered that Defendant was using the Moments Mark to advertise his performing group, Plaintiff, through counsel, sent Defendant several cease and desist notices requesting that Defendant cease using the Moments Mark. *Id.* ¶ 14. Specifically, Plaintiff sent

cease and desists notices on April 12, 2010, and on April 19, 2011. *Id.*, Ex. 1(b). Defendant continued to use the Moments Mark to advertise his group after Plaintiff sent these cease and desist notices. *See id.* ¶¶ 15-18.

Plaintiff filed this action on December 16, 2011.[2] Defendant Brown was served personally in Washington, D.C., on December 17, 2011. Affidavit of Service by Private Process Server, ECF No. 3. After Defendant Brown failed to file a timely answer or otherwise respond to the complaint, Plaintiff moved for the entry of default, *see* ECF No. 6, and the Clerk of the Court entered default as to Defendant Brown on April 4, 2012. On April 12, 2012, Plaintiff filed his first Motion for Entry of Default Judgement, ECF No. 9.[3] The Court denied that motion without prejudice because it did not specify the damages sought, and it did not include any evidentiary support. *See* Order dated April 30, 2012, ECF No. 12. Plaintiff filed a [18] Revised Motion for Default Judgment, including evidentiary support, on October 15, 2013. The Court denied without prejudice that Revised Motion for Default Judgment, as well, due to a fundamental inconsistency between Plaintiff's Complaint and the Revised Motion for Default Judgment. *See* Order dated May 27, 2014, ECF No. 24, at 2. Specifically, while Plaintiff sought damages in the Revised Motion for Default Judgment under 15 U.S.C. § 1114 of the Lanham Act, Plaintiff never cited this provision or asserted a claim under this provision in the original Complaint. *See id.* at 2. Pursuant to the Court's orders, Plaintiff amended his Complaint and served the Amended Complaint on Defendant Brown on November 7, 2014. *See* Amended Affidavit of Service, ECF No. 32. Upon Plaintiff's request, the Clerk of the Court entered default as to Defendant Brown

---

[2] The Complaint also named Building Bridges Across the River, Inc., as a defendant. Plaintiff never successfully served that defendant, and the claim against Building Bridges was dismissed on April 30, 2012. *See* Order, dated April 30, 2012, ECF No. 11.

[3] Plaintiff amended the first motion for default judgment that same day to add a proposed order to the motion. *See* ECF No. 10.

on January 13, 2015, and Plaintiffs filed the Renewed Motion for Default Judgment that is now before the Court.

## II. LEGAL STANDARD

After a default has properly been entered by the Clerk, a party may move the court for a default judgment. Fed. R. Civ. P. 55(b)(2). "The determination of whether default judgment is appropriate is committed to the discretion of the trial court." *Int'l Painters & Allied Trades Indus. Pension Fund v. Auxier Drywall, LLC,* 531 F. Supp. 2d 56, 57 (D.D.C. 2008) (citing *Jackson v. Beech,* 636 F.2d 831, 836 (D.C. Cir. 1980)). Upon entry of default by the clerk of the court, the "defaulting defendant is deemed to admit every well-pleaded allegation in the complaint." *Int'l Painters & Allied Trades Indus. Pension Fund v. R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d 26, 30 (D.D.C. 2002) (internal citation omitted). "Although the default establishes a defendant's liability, the court is required to make an independent determination of the sum to be awarded unless the amount of damages is certain." *Id.* (citing *Adkins v. Teseo,* 180 F. Supp. 2d 15, 17 (D.D.C. 2001)). Accordingly, when moving for a default judgment, the plaintiff must prove its entitlement to the amount of monetary damages requested. *Id.* "In ruling on such a motion, the court may rely on detailed affidavits or documentary evidence to determine the appropriate sum for the default judgment." *Id.*

## III. DISCUSSION

In his Renewed Motion for Default Judgment, Plaintiff requests injunctive and monetary relief. The Court discusses, in turn, its jurisdiction over this action, Defendant's liability, and the various forms of relief that Plaintiff requests.

**A. Jurisdiction**

Because Defendant has not responded or appeared, the Court will briefly address its jurisdiction. "[T]he procedural posture of a default does not relieve a federal court of its 'affirmative obligation' to determine whether it has subject-matter jurisdiction over the action." *Philadelphia Indem. Ins. Co. v. Emerson*, No. CV 14-301(ESH), 2015 WL 1359681, at *2, --- F.R.D. ---- (D.D.C. Mar. 24, 2015) (quoting *James Madison Ltd. v. Ludwig*, 82 F.3d 1085, 1092 (D.C. Cir. 1996)). Here, the Court has subject matter jurisdiction over the Lanham Act claim – the sole claim in this action – pursuant to 28 U.S.C. § 1338. In addition, "a court should satisfy itself that it has personal jurisdiction before entering judgment against an absent defendant." *Mwani v. Bin Laden*, 417 F.3d 1, 6 (D.C. Cir. 2005). Here, the Court is satisfied that it has personal jurisdiction over the Defendant because Defendant personally performed in a concert in the District of Columbia – on December 17, 2011 – that gave rise to this litigation. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 473 (1985) ("[A] forum legitimately may exercise personal jurisdiction over a nonresident who purposefully directs his activities toward forum residents" where "the litigation results from alleged injuries that arise out of or relate to those activities." (internal quotations and citations omitted)). The Court notes, as well, that Defendant Brown was served with the original Complaint while inside the District of Columbia for the purpose of performing the aforementioned December 2011 concert, which is the subject of this litigation. *See* Affidavit of Service by Private Process Server, ECF No. 3. Accordingly, the Court is satisfied that it has subject matter jurisdiction over this action and that it has personal jurisdiction over Defendant Brown.

**B. Liability**

Where, as here, there is a complete "absence of any request to set aside the default or suggestion by the defendant that it has a meritorious defense, it is clear that the standard for default judgment has been satisfied." *Auxier Drywall, LLC*, 531 F. Supp. 2d at 57 (internal quotation marks omitted). The Clerk of the Court has entered Defendant's default, and the factual allegations in the Amended Complaint are therefore taken as true. *R.W. Amrine Drywall Co., Inc.*, 239 F. Supp. 2d at 30. The Court finds that Plaintiff's Amended Complaint sufficiently alleges facts to support Plaintiff's claim of trademark infringement and counterfeiting under the Lanham Act, 15 U.S.C. §§ 1051 *et seq*.

To prevail on a claim for federal trademark infringement, "the plaintiff must show (1) that it owns a valid trademark, (2) that its trademark is distinctive or has acquired a secondary meaning, and (3) that there is a substantial likelihood of confusion between the plaintiff's mark and the alleged infringer's mark." *Globalaw Ltd. v. Carmon & Carmon Law Office,* 452 F. Supp. 2d 1, 26-27 (D.D.C. 2006) (internal quotation marks omitted). By default, Defendant admits that Plaintiff has a valid mark that has a secondary meaning and that there is substantial likelihood of confusion between Plaintiff's valid mark and Defendant's use of the Moments Mark. *See* Am. Compl. ¶¶ 7-9, 25-27.

To establish trademark counterfeiting, Plaintiff must show that Defendant infringed a registered trademark in violation of 15 U.S.C. § 1114(1)(a) and that Defendant "intentionally us[ed] a mark ..., knowing such mark ... is a counterfeit mark." 15 U.S.C. § 1117(b); *see also Lifted Research Group, Inc. v. Behdad, Inc.,* 591 F. Supp. 2d 3, 7 (D.D.C. 2008); *Babbit Elec., Inc. v. Dynascan Corp.*, 38 F.3d 1161, 1181 (11th Cir. 1994). As discussed above, Plaintiff has established that Defendant infringed Plaintiff's registered trademark. Through his default, Defendant has admitted the intentional use of Plaintiff's mark while knowing that mark is

counterfeit with respect to his use of the Moments Mark after April 2010 – when Plaintiff first sent him a cease and desist letter. *See* Am. Compl. ¶ 14, Ex. 1(b). Defendant's willfulness is demonstrated by the fact that he had knowledge of Plaintiff's trademark registration for the Moments Mark, and yet continued to use the Moments Mark to advertise his performing group after receiving a cease and desist letter from Plaintiff. Indeed, Defendant continued to use the Moments Mark after he was served with the original Complaint in this action: he was served on December 17, 2011, but advertised concerts that occurred in February 2012 as "Ray, Goodman & Brown" performing as "The Moments." *See* Renewed Mot., Ex. 2, Affidavit of Alan Beck ("Beck Aff.") ¶ 8. Accordingly, Defendant is liable for trademark infringement and counterfeiting.

**C. Relief**

Plaintiff requests relief in the form of injunctive relief and monetary damages, including attorneys' fees and costs. The Court addresses, in turn, each of these requests.

**1. Damages and Profits**

The Lanham Act allows a Plaintiff to "recover (1) defendant's profits" and "(2) any damages sustained by the plaintiff." 15 U.S.C. § 1117(a). In addition, in a case involving a counterfeit mark, "the court shall, unless the court finds extenuating circumstances, enter judgment for three times such profits or damages, whichever amount is greater" in circumstances when the "the violation consists of … intentionally using such mark or designation, knowing such mark or designation is a counterfeit mark." *Id.* § 1117(b). Plaintiff seeks treble profits in the amount of $192,000, and nominal damages in the amount of $5,000.

With respect to Plaintiff's request for nominal damages, the Plaintiff concedes that he has not suffered any actual, non-nominal damages as a result of Defendant's violations. *See* Renewed

Mot. at 16. The Court notes, first, that Plaint *does not* seek statutory damages, the alternative remedy provided pursuant to 15 U.S.C. § 1117(c), which allows statutory damages "instead of actual damages and profits." *Id.* In contrast, the provisions of section 1117(a) and (b), on which Plaintiff relies, do not provide for the recovery of nominal damages. The Lanham Act allows the Court to exercise its equitable discretion to enter judgment "for such sum as the court shall find to be just, according to the circumstances of the case" if the Court finds "that the amount of the recovery based on profits is either inadequate or excessive." *Id.* § 1117(a). However, the Act caps the award of damages at three times the amount of the actual damages. *Id.* Because Plaintiff concedes that he suffered no actual damages, the Court is precluded from exercising its equitable discretion to award nominal damages. Plaintiff chose not rely on the statutory damages provision of the statute, which allows damages without proof of damages or profits, and is, therefore, limited to the damages and profits provisions of section 1117(a) and (b). Accordingly, the Court shall not award Plaintiff nominal damages.

Profits are available as a remedy for trademark infringement upon a showing of willfulness or bad faith. *See ALPO Petfoods, Inc. v. Ralston Purina Co.*, 913 F.2d 958, 966 (D.C. Cir. 1990) (citing *Foxtrap, Inc. v. Foxtrap, Inc.*, 671 F.2d 636, 641 (D.C. Cir. 1982)). The Court concludes that, through Defendant's default, Defendant has admitted willfulness with respect to all occasions of trademark infringement that followed Plaintiffs initial cease-and-desist letter, sent in April 2010. *See* Am. Compl. ¶ 14, Ex. 1(b).

"In assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 28 U.S.C. § 1117(a). Plaintiff provides evidence of $19,500 in profits by Defendant in the years 2011 and 2012. However, Plaintiff argues that this is an inadequate recovery because "Defendant would have performed an

average of 8 times" in each of those years. Renewed Mot. at 16. Accordingly, Plaintiff seeks recovery for profits in the amount of $64,000 based on an estimate of 16 performances over the course of two years at a rate $4,000 in profit for each performance. Plaintiff bases his estimate of 8 performances per year on his experience as a soul music artist. *See* Renewed Mot. at 9-10 (citing Greene Aff. ¶¶ 10-14). Notwithstanding Plaintiff's experience, the Court concludes that this is an inadequate basis for determining Defendant's profits. The estimate of eight concerts per year is speculation as applied to these two specific years by this specific performer. While the Court agrees with Plaintiff that the evidence of *profits per concert* is substantially within Defendant's control, evidence as to the *total number of concerts* is freely available to Plaintiff, whether through research on the Internet on the various websites that advertise musical performances or by contacting concert venues individually.[4] Accordingly, the Court will not award profits based on Plaintiff's estimate of 16 performances over the course of two years. However, the Court will consider profits from the concerts specifically described by Plaintiff.

The Court now addresses each concert occurring in 2011 and 2012 enumerated by Plaintiff.[5] Through the Amended Complaint and Plaintiff's Renewed Motion for Default Judgment, Plaintiff provides details about the following concerts:

- **February 11-12, 2011.[6]** Defendant performed twice at the Gibson Amphitheatre, in Universal City, California. Am. Compl., Ex. 1(d); *id.*, Ex. 2, Beck Aff. ¶ 5. Defendant

[4] Plaintiff does not claim that Defendant obtained profits through private events that would not be recorded in publically available sources.

[5] Plaintiff alleges that Defendant performed as The Moments on February 12, 2010. *See* Am. Compl. ¶ 17. However, because this concert occurred *before* Plaintiff informed Defendant that he was infringing on Plaintiff's trademark, this concert cannot be the basis for an award of profits to Plaintiff. *See ALPO Petfoods*, 913 F.2d at 966 (profits not available absent willful violation).

[6] It appears that the February 2011 concerts are the ones referenced in the Amended Complaint as occurring "on or about April 2011." Am. Compl. ¶ 18 ("Defendant Brown wrongfully used the Moments Mark to advertise performances of 'Ray Goodman & Brown' in Universal City, California at the Gibson Amphitheatre.").

was paid $4,000 for the February 11 performance and was paid $4,000 for the February 12 performance. Beck Aff. ¶ 5.

- **August 1, 2011.** Defendant advertised a performance under the name "The Moments with Lavi," at the Beechman Theatre, in New York. *See* Am Compl., Ex. 1(f). Plaintiff does not identify the amount of profits associated with this performance.
- **October 22, 2011.** A concert that was scheduled to occur in Providence was advertised online at songkick.com. *See* Am. Compl., Ex. 1(f). However, that concert was canceled before it occurred. *See id.* Plaintiff does not identify any profits associated with this concert.
- **December 17, 2011.** It was advertised that Defendant would perform at The Arc Theater as The Moments. Am. Compl. ¶ 15. Plaintiff was unable to identify profits associated with this concert.
- **February 10, 2012.** Defendant performed as Ray, Goodman & Brown and as The Moments in Sacramento, California. Beck Aff. ¶ 9. Defendant was paid $4,000. *Id.*
- **February 11, 2012.** Defendant performed as Ray, Goodman & Brown and as The Moments in Fresno, California. *Id.* Defendant was paid $4,000. *Id.*
- **February 11, 2012.** Defendant performed as part of Ray, Goodman & Brown, performing also as "The Moments," at the Orleans Hotel in Las Vegas, Nevada. *Id.* Defendant was paid $3,500. *Id.*

Plaintiff has identified $19,500 in profits, in total, from five of these concerts. The Court now considers whether it can impute profits to the concerts where no profits were specifically identified. With respect to the October 22, 2011, concert, which was cancelled, the Court will not attribute any profits to a concert that did not occur without any indication that Plaintiff was paid for that cancelled event. With respect to Defendant's August 1, 2011, and December 17, 2011, concerts, Plaintiff was also unable to identify Defendant's actual profits. The Court recognizes that Defendant himself controls the best evidence of his profits, and the Court acknowledges that Plaintiff reported that it proved impossible to obtain this information from third parties. Given that the Court is charged with "enter[ing] judgment for such sum as the court shall find to be just," 15 U.S.C. § 1117(a), the Court will impute profits to those two concerts based on the other evidence submitted by Plaintiff. *See Louis Vuitton S.A. v. Spencer Handbags Corp.,* 765 F.2d

966, 973 (2d Cir. 1985) (where "the defendant controls the most satisfactory evidence of sales the plaintiff needs only establish a basis for a reasoned conclusion as to the extent of injury caused by the deliberate and wrongful infringement."). As shown above, Plaintiff has provided evidence showing that Defendant was paid $4,000 for each of four concerts in 2011 and 2012 and was paid $3,500 for a fifth concert in that same time period. The Court finds that $4,000 is a reasonable estimate of the profits Defendant earned from each concert in which he performed in 2011 and 2012. Therefore, the Court imputes a profit of $4,000 to the August 1, 2011, concert and a profit of $4,000 to the December 17, 2011, concert. In sum, the Court finds that Plaintiff has provided sufficient support for $19,500 in profits that have been specifically enumerated by Plaintiff and for $8,000 in profits that the Court imputes to Defendant's violations, for a total of $27,500 in profits.

The Court will award treble profits pursuant to section 1117(b) because Plaintiff has established Defendant's liability for trademark counterfeiting. Specifically, Plaintiff has established, through Defendant's default and through the information submitted in the record, that Defendant had been informed of his infringement on Plaintiff's trademark prior to the occurrence of any of the events that are the basis for this award of profits. Accordingly, the Court will award treble profits in the total amount of $82,500.

**2. Injunctive Relief**

Plaintiff requests the Court permanently enjoin Defendant from infringing Plaintiff's mark. A district court has authority under the Lanham Act to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent further violation of Plaintiff's trademark rights and copyrights. 15 U.S.C. § 1116(a). "In determining whether to enter a permanent injunction, the Court considers a modified iteration of

the factors it utilizes in assessing preliminary injunctions: (1) success on the merits, (2) whether the plaintiffs will suffer irreparable injury absent an injunction, (3) whether, balancing the hardships, there is harm to defendants or other interested parties, and (4) whether the public interest favors granting the injunction." *American Civil Liberties Union v. Mineta*, 319 F. Supp. 2d 69, 87 (D.D.C. 2004).

As discussed above, Plaintiff has succeeded, by default, in establishing Defendant's liability in this action. "When a copyright plaintiff has established a threat of continuing infringement, he is *entitled* to an injunction." *Walt Disney Co. v. Powell*, 897 F.2d 565, 567 (D.C. Cir. 1990) (quoting *Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 976 (9th Cir.1981), *rev'd on other grounds*, 464 U.S. 417 (1984)). However, here, Plaintiff has not shown a threat of continuing infringement. The most recent examples of infringement identified by Plaintiff in the record before the Court are concerts that occurred in February 2012. *See* Beck Aff. ¶¶ 7, 9. The absence of any more recent examples of infringement is particularly notable as Plaintiff filed the Amended Complaint in June 2014, and filed the Renewed Motion for Default Judgment in February 2015. In those filings, Plaintiff did not identify any examples of infringement that occurred over the past three years. The Court notes that, if Defendant is continuing to use the Moments Mark, that information would be freely available to Plaintiff, and there is no reason why Plaintiff would not be able to provide that information to the Court. In sum, Plaintiff has provided no evidence that Defendant has infringed on his trademark since February 2012, and the Court will not infer from the record in front of it that ongoing infringement is occurring. Without a demonstration of a threat of ongoing harm, the Court cannot conclude that Plaintiff will suffer any irreparable injury. For that reason, the Court concludes that a preliminary injunction against Defendant is not warranted.

**3. Attorneys' Fees and Costs**

Finally, Plaintiff requests attorneys' fees and costs in this matter. The Court addresses the request for costs followed by the request for attorneys' fees.

The Lanham Act permits a plaintiff to recover "the costs of the action." 15 U.S.C. § 1117(a). Plaintiff seeks costs in the amount of $1,106.60, including the initial filing fee for this action, costs for service of the original Complaint and the Amended Complaint, and postage for serving subpoenas via certified mail. There is adequate support for this request in the record.[7] *See* Am. Compl., Ex. 3, Greene Aff. ¶¶ 2-5 and attachments; *id.*, Ex. 4, Declaration of Lita Rosario ¶ 7. Accordingly, the Court awards Plaintiff costs in the amount of $1,106.60.

The Act provides for the award of reasonable attorneys' fees to the prevailing party in a trademark infringement claim only "in exceptional cases," 15 U.S.C. § 1117(a), and for claims of trademark counterfeiting, *see id.* § 1117(b). Because the Court concluded, above, that Plaintiff prevailed on his claim for trademark counterfeiting as a result of Defendant's default, Plaintiff is eligible for attorney's fees under section 1117(b). Therefore, the Court need not determine whether this case represents exceptional circumstances that merit attorneys' fees under section 1117(a).[8]

---

[7] It appears that the costs reported in the record come to a total of $1151.60, not a total of $1106.60. *See* Renewed Mot. at 12. However, the Court will award no more in costs than requested by Plaintiffs.

[8] The Court notes that, in *Octane Fitness, LLC v. ICON Health & Fitness, Inc.*, 134 S. Ct. 1749 (2014), the Supreme Court interpreted the phrase "exceptional circumstances" in the attorneys' fees provision of the Patent Act, holding that "an 'exceptional' case is simply one that stands out from others with respect to the substantive strength of a party's litigating position (considering both the governing law and the facts of the case) or the unreasonable manner in which the case was litigated." *Id.* at 1756. Subsequently, the Fourth Circuit Court of Appeals concluded that, because the language of the attorneys' fees provision in section 1117(a) is identical to the language of the Patent Act, "there is no reason not to apply the *Octane Fitness* standard when considering the award of attorneys fees under § 1117(a)." *Georgia-Pac. Consumer Products LP v. von Drehle Corp.*, 781 F.3d 710, 721 (4th Cir. 2015), *as amended* (Apr. 15, 2015). Because the

While the Court concludes that Plaintiff is eligible for an award of attorneys' fees, Plaintiff has provided insufficient support for his request for $25,668.75 in fees. "In the preparation of fee applications it is insufficient to provide the District Court with very broad summaries of work done and hours logged." *Nat'l Ass'n of Concerned Veterans v. Sec'y of Def.*, 675 F.2d 1319, 1327 (D.C. Cir. 1982). Here, through the declaration of Plaintiff's attorney, Lita Rosario, Plaintiff only provides the total number of hours spent in connection with this matter by Rosario and by her associate, broken down into two time periods, as well as the attorneys' billable rates. Plaintiff does not provide any details about the activities that each individual attorney performed. "Without additional information as to the experience of each attorney at issue, as well as the work performed by each attorney for specific periods of time, the Court cannot determine whether the rates and hours billed by the Plaintiffs' attorneys were reasonable." *SEIU v. Artharee*, 942 F. Supp. 2d 27, 31 (D.D.C. 2013). Because Plaintiff has not submitted documentation itemizing the activities in which each attorney engaged on Plaintiff's behalf, as well as information about each attorney's qualifications that would support the billable rates presented, the Court cannot issue an award of attorneys' fees.

While the Court denies without prejudice Plaintiff's request for attorneys' fees because of the lack of documentation, the Court notes that it had previously denied without prejudice Plaintiff's first Revised Motion for Default Judgment because the original Complaint failed to identify the relevant provisions of the Lanham Act on which Plaintiff relied for relief. Plaintiff subsequently filed an Amended Complaint to comply with the May 27, 2014, decision of this Court. The Court concludes that activities by Plaintiff's counsel solely to remedy Plaintiff's

Court concludes that Plaintiff is eligible for attorneys' fees under section 1117(b), the Court need not consider the applicability of the *Octane Fitness* test to the circumstances of this case.

counsel's earlier failure to rely on the appropriate provisions of the Lanham Act in the original Complaint are not compensable. It would not be reasonable for Defendant to pay to remedy a mistake by Plaintiff's counsel.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS IN PART and DENIES IN PART Plaintiff's [36] Renewed Motion for Default Judgment. The Court will enter a default judgment in the amount of $83,606.60 in Plaintiff's favor, including $82,500 in treble profits and $1,106.60 in costs, based on the allegations in the complaint and the documentation that Plaintiff submitted in support of the Renewed Motion for Default Judgment. The Court denies Plaintiff's request for a permanent injunction for the reasons stated above. The Court denies without prejudice Plaintiff's request for attorneys' fees because Plaintiff has not provided the documentation necessary for the Court to issue such an award.

An appropriate Order accompanies this Memorandum Opinion.

Dated: May 15, 2015

/s/
COLLEEN KOLLAR-KOTELLY
United States District Judge